UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL SELECKI,

                                          Civil Action No.13-CV-11300

       Plaintiff,               HON. GERSHWIN A. DRAIN

v.

GENERAL MOTORS, *et al.*,

       Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#27] AND CANCELLING HEARING

**I.    INTRODUCTION**

On March 25, 2013, Plaintiff filed the instant action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. He brings his claims against his former employer and supervisor, Defendants General Motors, LLC ("GM") and Matt Hespenburger. Presently before the Court is Defendants' Motion for Summary Judgment, filed on July 16, 2014.[1] This matter is fully briefed and the Court finds that

---

[1] In April of 2014, this Court referred the action to the Pro Bono Panel because Plaintiff is proceeding *pro se*. *See* Dkt. No. 15. However, the Panel was unable to find counsel willing to represent Plaintiff. Thus, in December of 2014, the Court rescinded the Order Referring Action to Pro Bono Panel and ordered Plaintiff to file a Response to Defendants' present motion. *See* Dkt. No. 22. Plaintiff filed three separate responses. *See* Dkt. Nos. 24, 25 and 26. Docket entries 25 and 26 are duplicates.

resolution of the instant motion does not require oral argument. As such, the Court will cancel the May 4, 2015 hearing and will determine the motion on the briefs submitted. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

Plaintiff began working for GM at its Toledo, Ohio transmission facility as a quality operator in 1994. Plaintiff was a member of the Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and his employment terms were governed by a collectively bargained GM-UAW Agreement. As a quality operator, Plaintiff's job duties rotated based on the plant's needs and typically involved working on the assembly line, packing and preparing parts for the line, unloading trucks and driving a forklift.

GM and the UAW have developed a process known as Accommodating Disabled People in Transition or ADAPT to place hourly employees with physical impairments in available jobs within their restrictions. Throughout Plaintiff's employment with GM, he was placed in various jobs through the ADAPT program for various physical restrictions.

On March 29, 2011, Plaintiff was working in a position at the end of the assembly line that required him to use a forklift to stack empty pods on the line that

were to be filled with assembled transmissions. Plaintiff would then remove the transmission pods from the line and feed them through a bander that secures the pods for shipping. According to Plaintiff, the bander stopped working and he stepped off of the forklift. This caused the production line to go down.

Defendant Hettmansperger spoke with Plaintiff to determine why the line had stopped. Hettmansperger smelled alcohol on Plaintiff's breathe. Plaintiff stated he was leaving and walked away. Hettmansperger instructed Plaintiff to stop, however Plaintiff retorted with threatening language. Plaintiff denies getting physical with Hettmansperger, however he admits that when Hettmansperger's phone fell to the ground, Plaintiff picked it up and walked away with it.

When security arrived, Hettmansperger reported that Plaintiff had charged him, punched and shoved him into a bank of lockers causing him to drop his cellular phone. Security noted that Hettmansperger had a visible mark on his right forearm and he received treatment from the plant medical department for his arm and swelling in his jaw and knee.

Management investigated the incident, reviewed Hettmansperger's medical report, written statements obtained by security and security's final report. When Plaintiff returned to work, a disciplinary interview was conducted by Labor Relations Manager George Williams and Manager Chris Koviak. A UAW representative was

also present. When the interview was complete, Plaintiff signed Williams's interview notes to affirm the written notes were "accurate and true." Following the interview, GM terminated Plaintiff based on its findings from the investigation. Plaintiff believes Mr. Williams and Mr. Koviak made the decision to terminate his employment. He does not know if they were aware of his medical condition.

On December 19, 2011, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging his termination was because of his race and disability. Plaintiff did not identify his disability in the EEOC claim. On January 18, 2012, the EEOC dismissed the charge and advised Plaintiff that he had ninety days to file any lawsuit.[2]

Plaintiff initiated a union grievance challenging his discharge, and he was reinstated on March 12, 2012 as a result of a negotiated resolution to his grievance. In exchange for reinstatement, Plaintiff signed a last chance agreement in which he agreed to several conditions. Specifically, he agreed to be placed on probation for twenty-four months, to refrain from initiating any contact with Hettmansperger and to release all claims against GM regarding discipline, discharge or other employment policies. Plaintiff further agreed that his disciplinary record would be set at the last

---

[2] Plaintiff filed a second charge of discrimination on March 6, 2012, however this was administratively closed as duplicative of his first charge.

step of the progressive discipline process. Thus, if he engaged in further insubordination, threatening or intimidating conduct or abusive language, he would be terminated.

Plaintiff was assigned to a different shift, department and supervisor upon his return to work. Plaintiff did not have any medical restrictions and he was cleared to return to work by the plant's medical department. When he was asked by the medical department personnel if there was any reason he was unable to work, Plaintiff reported that he has high blood pressure that was controlled with medication. He did not identify any other physical impediments to working.

In June of 2012, Plaintiff was scheduled to have surgery on his hand. Plaintiff's doctor issued a short-term restriction for Plaintiff. Specifically, Plaintiff was limited to total use by his right hand. Plaintiff presented his restriction for a one-handed job to GM and it was reviewed by the plant's medical department and an ADAPT representative. However, there were no available jobs at that time within Plaintiff's restriction. Therefore, GM placed Plaintiff on paid sick leave from June 5, 2012 until his restriction expired on July 3, 2012.

On August 10, 2012, a quality analyst was assigned to clean out a break room refrigerator because the power was scheduled to be shut down over the weekend. Plaintiff placed his lunch in the refrigerator, with his cellular phone and glasses

packed inside, even though he noticed the sign posted on the refrigerator. Near the end of the second shift, the quality analyst cleaned out the refrigerator and threw out any unlabeled items, including Plaintiff's lunch. When Plaintiff realized his lunch had been thrown out, he confronted the quality analyst and a verbal altercation ensued.

The incident was immediately investigated. Statements were taken from the quality analyst, as well as other employees who witnessed the incident. The witness statements corroborated the quality analyst's statement, including Plaintiff's use of profanity in a loud, threatening tone. Plaintiff was also interviewed in the presence of his union representative. Plaintiff admitted the incident occurred and that he called the quality analyst an inappropriate name.

Based on the investigation, GM concluded that Plaintiff violated GM policy and Shop Rule No. 31 in violation of his last chance agreement. Plaintiff was terminated on August 16, 2012. Plaintiff has no knowledge as to who made the decision to terminate his employment and whether anyone with decision making authority knew of his previous EEOC charge. Neither Plaintiff nor the UAW initiated a grievance contesting Plaintiff's second discharge. Plaintiff filed a third EEOC charge on September 5, 2012 alleging disability discrimination and retaliation. Plaintiff again failed to identify his disability in the charge. The EEOC dismissed Plaintiff's charge on February 27, 2013.

### III. LAW & ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

**B. Disability Discrimination**

In order to establish disability discrimination,[3] Plaintiff must first establish a *prima facie* case by showing: (1) he is disabled, (2) otherwise qualified for the position held or sought, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) his employer knew or had reason to know of Plaintiff's disability; and (5) Plaintiff was replaced. *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004). Once Plaintiff establishes his *prima facie* case, the burden shifts to GM to offer a legitimate, non-discriminatory explanation for its action. *Id*. When GM satisfies its burden of production, the burden then shifts to Plaintiff to show GM's proffered explanation is pretextual. *Id*.

Assuming without deciding that Plaintiff is disabled within the meaning of the Act and that he was otherwise qualified for the position, his prima facie case still fails because he cannot show GM management was aware of his disabilities. Plaintiff admits he has no evidence suggesting that Mr. Williams, Mr. Koviak or any other members of management with decision making authority regarding his termination knew of his medical condition. Plaintiff cannot rely on his first EEOC charge to establish knowledge on the part of management because he never identified any

---

[3] Because Plaintiff has no direct evidence of discrimination, the burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972) is applicable. *See Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004).

disability in his charge.

Moreover, even if Plaintiff could establish a *prima facie* case of disability discrimination, GM has come forward with a legitimate, non-discriminatory explanation for Plaintiff's termination and Plaintiff has failed to demonstrate that GM's explanation is pretext for disability discrimination. Plaintiff repeatedly violated GM rules by using physical force on his supervisor, as well as by using profanity and threatening language during the incident with the quality analyst. Additionally, the fact that GM agreed to rehire Plaintiff after the incident with Hettmansperger belies any legitimate inference of disability discrimination.

Plaintiff filed two Responses to Defendants' Motion for Summary Judgment. Plaintiff offers no evidence to demonstrate a genuine issue for trial exists as to his disability discrimination claim. Rather, he asserts conclusory and unsubstantiated arguments that fail to meet his burden under Rule 56. Mere allegations or denials in the Plaintiff's responsive briefs do not meet his burden to show a genuine issue for trial exists. *Anderson*, 477 U.S. at 248, 252. Therefore, GM is entitled to judgment in its favor on Plaintiff's disability discrimination claim.

### C. Failure to Accommodate

Plaintiff's failure to accommodate claim likewise lacks any genuine issues of material fact requiring submission to the jury. The gist of Plaintiff's failure to

accommodate claim is that GM failed to follow the ADAPT procedure by finding him a one-handed job within the plant when he required surgery on his hand in June of 2012.

To establish a *prima facie* case for failure to accommodate a disabled employee, a plaintiff must show that: (1) he has a disability; (2) he is qualified for the position, with or without reasonable accommodation; (3) the employer knew or had reason to know of plaintiff's disability; (4) he requested an accommodation; and (5) the employer did not provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011).

Plaintiff has not come forward with any evidence showing he was qualified for his position with or without reasonable accommodation. It is Plaintiff's burden to demonstrate an accommodation would allow him to perform the essential functions of his employment, "including the existence of a vacant position for which [he] is qualified." *Karlik v. Colvin*, 15 F. Supp.3d 700, 707 (E.D. Mich. 2014) (citing *McBride v. BIC Consumer Prods., Mfg., Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009)). Plaintiff has failed to come forward with any evidence showing the plant had an available one-handed position when he was placed on restriction in June of 2012.

In any event, GM provided a reasonable accommodation by placing Plaintiff on paid sick leave. It is well established that a leave of absence constitutes a

reasonable accommodation. *Tubbs v. Formica Corp.*, 107 F. App'x 485, 488 (6th Cir. 2004). At the time Plaintiff was placed on a one-handed restriction, the plant had no available jobs that fit his restriction. As such, GM's provision of providing temporary leave in lieu of termination was a reasonable accommodation. *See Black v. Wayne Ctr.*, No. 99-1225, 99-1249, 2000 U.S. App. LEXIS 17567, *13 (6th Cir. Jul. 17, 2000).

Based on the foregoing, GM is entitled to judgment in its favor on Plaintiff's failure to accommodate claim.

### D.     Retaliation

Plaintiff has likewise failed to come forward with specific facts showing there is a genuine issue for trial on his retaliation claim. In order for Plaintiff to establish a *prima facie* case of retaliation under the ADA, he must show: (1) he engaged in protected activity; (2) the employer knew of this exercise of the plaintiff's protected rights; (3) the employer took an employment action adverse to the plaintiff; and (4) there is a causal connection between the protected activity and the adverse employment action. *Blizzard v. Marion Tech. College*, 698 F.3d 275, 288 (6th Cir. 2012). Similar to his discrimination claim, if Plaintiff establishes his prima facie case, the burden shifts to GM to articulate a legitimate, non-retaliatory reason for the action. *Id.* Plaintiff must then show GM's proffered reason is pretext for retaliatory animus.

*Id.*

As an initial matter, Plaintiff admits that he has no knowledge that any of the relevant decision-makers knew of his EEOC charges. Moreover, Plaintiff cannot show a causal connection between his protected activity and his termination. By agreeing to the terms of the last chance agreement, Plaintiff acknowledged that he was at the last step of the progressive discipline process and any rules violations he committed would lead to his termination. Plaintiff's claim that his work assignment, a second shift assembly job, was retaliatory is belied by the last chance agreement. Plaintiff's job and shift placement was a condition of his reinstatement so that he would avoid interaction with Hettmansperger.

Lastly, Plaintiff's assertion that GM failed to follow the ADAPT procedure when he was placed on a one-handed restriction is without merit. Plaintiff has not shown any positions were available that could accommodate this restriction. GM is likewise entitled to judgment in its favor on Plaintiff's retaliation claim.

### E. Individual Liability

Lastly, while Plaintiff has failed to show any of his claims warrant submission to the jury, Defendant Hettmansperger is also due to be dismissed because there is no individual liability for disability discrimination under the ADA. *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 (6th Cir. 1999); *see also Wathen v. General*

*Electric Co.*, 115 F.3d 400, 404 (6th Cir. 1997).  As such, Plaintiff's ADA claims against Hettmansperger fail as a matter of law.

## IV.    CONCLUSION

For the reasons that follow, Defendants' Motion for Summary Judgment [#27] is GRANTED.

SO ORDERED.

Dated:  March 20, 2015                        /s/Gershwin A Drain
                                              GERSHWIN A. DRAIN
                                              UNITED STATES DISTRICT JUDGE